GARY A., et al., Plaintiffs-Appellees,

v.

NEW TRIER HIGH SCHOOL DISTRICT NO. 203, et al., Defendants-Appellants.

No. 85–3089.

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1986.

Decided July 18, 1986.

---

Rosalyn B. Kaplan, Ill. Atty. Gen. Office, Chicago, Ill., for defendants-appellants.

Brooke R. Whitted & Richard C. Spain, Whitted & Spain, P.C., Chicago, Ill., for plaintiffs-appellees.

Before COFFEY and EASTERBROOK, Circuit Judges, and CAMPBELL, Senior District Judge.*

PER CURIAM.

The Education for All Handicapped Children Act of 1975, 20 U.S.C. §§ 1400–1420 (the Act), provides federal funds to help pay the costs of educating handicapped children, including the costs of necessary private residential facilities. In order to qualify for such assistance, a state must establish a program that "assures all handicapped children the right to a free appropriate public education". 20 U.S.C. § 1412(1). Illinois agreed to participate in this program and amended Ill.Rev.Stat. ch. 122 ¶ 14–1.01 to –14.01 to comply with the requirements of the federal program.

Gary A. is a handicapped child living within New Trier High School District 203. In September 1979, at the direction of the Director of Special Education at New Trier and with the consent of his parents, Gary was placed in a private residential educational facility. The District refused to pay for more than $32,000 of the costs of the facility for the 1979–80 school year. The District relied on a state rule that excluded "therapeutic services" from the state's program. Mr. A.'s medical insurance carrier paid $12,000, leaving a balance of $20,000 which Mr. and Mrs. A. had to pay.

In 1980 a preliminary injunction suspended the state rule in question. *Gary B. v. Cronin*, 542 F.Supp. 102 (N.D.Ill.1980). The rule was redrafted to remove the exclusion of funds for counseling and therapeutic services. Plaintiffs filed suit against the District, the Board of Education of the District, the Superintendent of the District, the State Board of Education, and various other state entities and employees [1] on May 18, 1983, in order to obtain reimbursement from the defendants for Gary A.'s educational expenses. They argued that the defendants violated Gary's right to a free education under the Act, the equal protection clause of the fourteenth amendment, and state law. The defendants argued that there is no cause of action under state law or the constitution and that the federal Act does not provide a right of action for retroactive relief. Alternatively, they argued that such relief would be barred by the eleventh amendment. In a memorandum opinion the district court dismissed the claims under the constitution and state law and rejected the defendants' eleventh amendment defense, relying on *Parks v. Pavkovic*, 536 F.Supp. 296 (N.D. Ill.1982). It later entered summary judgment for the plaintiffs on the federal law claim. The defendants do not contest the holding that they violated the Act. Still later, the district court entered judgment for the plaintiffs for $20,158.61, representing the plaintiffs' costs for Gary's education. Recognizing that the *Parks* case relied on in his earlier decision had, in the interim, been reversed in *Parks v. Pavkovic*, 753 F.2d 1397 (7th Cir.1985), the district judge nevertheless held for the plaintiffs, citing an even more recent case, *Burlington School Committee v. Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), for the proposition that retroactive relief is available.[2] The only issue on appeal is whether the defendants may be required to pay money for prior violations of the Act.

The Act provides an explicit private right of action. 20 U.S.C. § 1415(e)(2). The federal courts may "grant such relief as the

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. For simplicity's sake we refer to them as the "local defendants" (the District, the District Board of Education, and the Superintendent of the District) and the "state defendants" (the remaining defendants).

2. On appeal, the defendants do not contest the availability of a private right of action under the Act. They argue only that retroactive monetary relief is barred by the eleventh amendment. *Burlington* held that retroactive monetary relief is available under the Act for educational expenses incurred during the period in which a parent of a handicapped child challenged a school district's proposed "Individual Education Program." We are not presented with the question whether *Burlington* authorizes a private right of action under the Act in all situations.

court determines is appropriate." *Parks v. Pavkovic,* 753 F.2d 1397, held that although this section provides for prospective relief, it does not authorize damages or other retroactive monetary relief. *Id.* at 1407.[3] The plaintiffs properly point out that *Parks* was decided before the Supreme Court issued its opinion in *Burlington,* which held that although "damages" are not available under the Act, "reimbursement" is, *id.* at 2003. The Court ordered a local school district to reimburse the parent of a handicapped child for his expenses in enrolling the child in a private school specializing in the education of handicapped students.

### A

We agree with the defendants that *Burlington* does not control this case. The *Burlington* Court did not address the issue of sovereign immunity and could not have. That case was a consolidation of two actions. In one the local school board sued the state to reverse a state administrative ruling that the locality was liable for reimbursement, and in the other the state sued the locality for injunctive relief in order to force the reimbursement. Neither involved payments by the state, and the state was a defendant in only one. In both cases the state was arguing *in favor* of retroactive monetary relief to be paid by the locality (which was not itself entitled to eleventh amendment immunity). Because the eleventh amendment and principles of sovereign immunity apply only when monetary relief is sought *against* the state (not *by* the state), the immunity issue could not have been before the Court. Thus it is not

possible to read the *Burlington* opinion as support for the plaintiffs.

### B

A long line of cases has established that an unconsenting state may not be sued in federal court, either because of the eleventh amendment, *see, e.g., Papasan v. Allain,* —— U.S. ——, 106 S.Ct. 2932, 2939, 90 L.Ed.2d —— (1986); *Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), or because of principles of sovereign immunity inherent in the structure of the constitution, *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Pennhurst, supra.* A state may be sued in federal court only if it consents and waives its immunity, *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883), or if Congress, using power granted by § 5 of the fourteenth amendment, abrogates the state's immunity, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

The plaintiffs argue first that the state has waived its immunity by participating in this federally funded and regulated program. They cite *Students of California School for the Blind v. Honig,* 736 F.2d 538 (9th Cir.1984).[4] We find this argument unpersuasive. The Supreme Court has rejected the concept of waiver by mere participation. *Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 3145 & n. 1, 87 L.Ed.2d 171 (1985), holds that a state waives its constitutional immu-

---

3. *Parks* took pains to reserve the possibility of an action for damages in "circumstances more extraordinary than those in this case." 753 F.2d at 1407. It also held that a small amount of retroactive monetary relief could be ordered in order to effect the injunctive relief requested. There is no argument in our case that such "extraordinary circumstances" exist. Likewise there is no argument in our case that an award of money is necessary to effectuate injunctive relief—no such relief was requested, and none is necessary given the new state rules.

4. *Honig* relied on *Scanlon v. Atascadero State Hospital,* 735 F.2d 359 (9th Cir.1984), for this proposition. That case was reversed by the Supreme Court. *Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). *Honig* itself was vacated as moot, 471 U.S. 148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985), a fact none of the parties brought to our attention.

nity by participating in a federally-funded program only if participation is accompanied by "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." That token of consent may appear in the state's law or in an unambiguous statutory condition on participation. *See also Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (waiver found only "where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction'"); *Florida Department of Health & Rehabilitative Services v. Florida Nursing Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). The plaintiffs point to no language in the state statute or any "overwhelming implications from the text" of the state statute to support their claim that the state consented to suits for damages and waived its immunity. There is no such language or implication in the statute. We find that the state did not waive its constitutional immunity.

■ The plaintiffs next argue that Congress abrogated the state's eleventh amendment immunity by enacting the Act pursuant to § 5 of the fourteenth amendment.[5] *Fitzpatrick v. Bitzer, supra.* The most recent statement of the law on this issue is found in *Atascadero.* Noting that "the Eleventh Amendment implicates the fundamental constitutional balance between the Federal government and the States", the Court held that Congress may abrogate the states' immunity "only by making its intention *unmistakably clear in the language of the statute." Id.* 105

S.Ct. at 3145–47 (emphasis added). Furthermore, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Id.* at 3149.

The statute at issue in *Atascadero,* § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, is similar in all relevant parts to the statute at issue in this case. Both explicitly provide a private right of action for prospective relief for all aggrieved parties. Neither explicitly provides a damages remedy or other retroactive relief. Both involve programs through which states receive federal assistance with accompanying federal regulations. In *Atascadero* the Supreme Court found no abrogation of the states' constitutional immunity. Likewise, there is none in this case.[6] The eleventh amendment immunizes the state defendants from suits for the relief requested by the plaintiffs.[7]

### C

■ The local defendants argue that they too are immune under the eleventh amendment because "it is clear that the covered expenses ... are State, and not local, expenses and the State will have no recourse but to reimburse the school district through funds appropriated from the state treasury, if the judgment against the school district is not reversed." The district court did not address the question whether the eleventh amendment applies to the local defendants because it held that the constitution does not bar any suits for retroactive relief under the Act. We have rejected this holding. Nonetheless, we

5. 20 U.S.C. § 1400(b)(9) states that this statute was passed "in order to assure equal protection of the law." We have held that this shows that Congress passed the Act "under the authority granted to Congress by section 5 of the Fourteenth Amendment". *Parks v. Pavkovic,* 753 F.2d at 1407.

6. The situation might have been different if the Act had provided for relief *only* against the state. Then there would be a stronger argument that Congress subjected the state to federal jurisdiction. We express no opinion on whether

such a statute would be sufficient to abrogate the states' immunity.

7. The plaintiffs point to language in our opinion in *Parks v. Pavkovic,* 753 F.2d at 1401, that there is no eleventh amendment bar to retroactive monetary relief under the Act. Although this *dictum* may have been persuasive at the time it was written, it is no longer. This position was rejected by the subsequent Supreme Court opinion in *Atascadero.* The *Parks dictum* no longer has any vitality.

may affirm the district court on any ground properly preserved by the parties. *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976). Thus we must decide whether the eleventh amendment also bars relief against the local defendants.

The eleventh amendment applies to "States". A local school district ordinarily is not a "State" and hence may be sued in federal court for damages or other retroactive relief for violations of federal law or the constitution. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The fact that a local school district receives "a significant amount of money from the state" does not mean that it is an arm of the state. *Ibid.* Local school boards in Ohio and Illinois have extensive powers to issue bonds and levy taxes and usually pay their own judgments. It is irrelevant that a state provides some funds that may be used to pay judgments.[8]

The local defendants insist that they are immune because *this* judgment will be paid by the state. If they mean that state aid may find its way to the plaintiffs' pockets, that factor was held irrelevant in *Mt. Healthy*. Indeed, any other holding would provide immunity to municipalities, because almost all receive some state funding. That is not the case. *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890); *Moor v. County of Alameda*, 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–1802, 36 L.Ed.2d 596 (1973).

The local defendants also seem to argue that because the state has decided to reimburse them, and hence the state treasury will ultimately pay, the local defendants are immune. This argument also is mistaken. A state's decision to indemnify a state employee or subdivision does not grant that employee or subdivision constitutional immunity. *Duckworth v. Franzen*, 780 F.2d 645, 650–51 (7th Cir.1985). A state may not, by state law, expand a limited constitutional immunity.[9] A state may not use state law to limit the jurisdiction of the federal courts. The adjustment of accounts between the local and state defendants is a matter for them to resolve. The judgment will run against the local defendants only. Any recourse by the local defendants would occur through administrative or judicial proceedings in the state, proceedings the federal court may neither instigate nor prevent.

There is a third possible reason why the local defendants are immune from judgment for the relief requested in this case. The state's role under the federal statute as administrator and conduit of federal funds to the local school authorities might change the character of the local entity into an arm of the state for the limited purpose of this Act. The defendants argue that a local entity, not otherwise entitled to the state's constitutional immunity, may obtain a "limited purpose" immunity when that entity acts pursuant to state rules enacted to carry out a federal law. Cases offer little guidance about the scope of such a "limited purpose" immunity.

8. The *Mt. Healthy* test for whether an entity is an arm of the state is fact specific. Courts are instructed to look to the "nature of the entity created by state law." 429 U.S. at 280, 97 S.Ct. at 572. There is no significant difference between the Ohio school board in *Mt. Healthy* and the Illinois school board in this case. Neither is an arm of the state for purposes of the eleventh amendment.

9. Instrumentalities of a state do partake of the state's eleventh amendment immunity. The state may establish such state agencies. The "nature of the *entity* created by state law" determines whether it is a "state" or a "municipality" for purposes of the eleventh amendment. *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572 (emphasis added); *Morris v. Washington Metro. Area Transit Authority*, 781 F.2d 218 (D.C.Cir.1986). Illinois could have established a single state agency to control all public education instead of establishing local school districts. By doing so it might have conferred eleventh amendment immunity on that agency. *Cf. Morris, supra.* Instead, it chose to organize public education through local school districts that do not have immunity. The state's reimbursement scheme does not change the "nature" of the District in any relevant way. *See Mt. Healthy, supra.*

A few cases decided by the Supreme Court involved local defendants that obeyed state rules that violate federal statutory rules for the administration of federal aid programs. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*Pennhurst II*), was one, but the Court did not discuss the significance of the situation because of its holding in *Pennhurst I,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), that there is no federal private right of action under the federal statute. *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), involved welfare payments by a locality of federal AFDC funds, but the relief requested was prospective only, so the immunity issue never arose. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), is closest to this case. There, as here, federal funds were distributed by state and local welfare departments. The Court found that the eleventh amendment barred the action for retroactive monetary relief. The Court dealt *only* with the "State officials". *Id.* at 659, 94 S.Ct. at 1354. It did not mention the county defendants beyond the statement of facts. The issue of immunity for the local defendants was neither raised nor addressed. The Court's judgment applied to the state officials only and therefore does not control this case.

The defendants have not found a case, as we have not, in which an entity not otherwise immune under the eleventh amendment acquired immunity by virtue of its role in a state administered federal aid program. The details of the Act suggest no such immunity. 20 U.S.C. § 1411(a)(1) establishes a federal subsidy for all public schools that provide free education for the handicapped (or arrange for free private education) if the state agrees to join the federal program and follow federal guidelines. At least 75% of all funds provided to the states under this program must be sent to the "local educational agencies". Section 1413(a)(9) requires all participating state programs to "provide satisfactory assurance that Federal funds made available under this subchapter (A) will not be com-mingled with State funds, and (B) will be so used as to supplement and increase the level of State and local funds expended for the education of handicapped children and in no case to supplant such state and local funds ..." Section 1411(d) grants these funds to the local school districts. The state is a conduit, as the money is earmarked for the locality. The money may best be characterized as "federal" or "local", not "state". The state must guarantee other expenses of educating handicapped children beyond the federal subsidy in order to receive federal funds, but that money may come exclusively from local districts if the state so decides. Nothing in the *federal* law requires expenditures from the state treasury, so nothing in the federal program suggests that the local defendants partake of the state's constitutional immunity.

The federal statute contemplates states passing federal money to local school districts, which then pay for education with a combination of federal and non-federal money that may be local or state. A state *may* decide to reimburse the local school districts. Illinois has done this. The money paid by the state to the local defendants is no different from either indemnity agreements or the usual state aid, neither of which creates immunity from suit. Unless it can be said that a judgment nominally against the local government runs against the state, see *Pennhurst II,* 465 U.S. at 123 n. 34, 104 S.Ct. at 920–21 n. 34, the character of the entity controls. When the state has discretion to pay or not to pay according to its own lights, the judgment does not run against the state treasury.

The Supreme Court has refused to extend constitutional immunity to localities and has been hesitant to extend such immunity even to some state agencies. *Lake Country Estates v. Tahoe Planning Agency,* 440 U.S. 391, 400–01, 99 S.Ct. 1171, 1176–77, 59 L.Ed.2d 401 (1979). *Mt. Healthy* gives us marching orders. The local defendants have no constitutional immunity in this case. If the state wishes to avoid liability in its turn, it need only repeal the indemnification statute.

*Pennhurst II* suggests one final complication. In that case, as in this one, the suit was filed against both state and county officials. The Supreme Court concluded that neither the state nor the county could be ordered to afford relief on the basis of state law. 465 U.S. at 123–24, 104 S.Ct. at 920–21. This may mean that local governments receive a greater immunity when the plaintiffs foolishly join them with state governments than they would otherwise. This would not be a reasonable reading of *Pennhurst II,* however. The Court's conclusion that the local officials must be dismissed came from its assessment that "without the injunction against the state institutions and officials in this case, an order entered on state-law grounds necessarily would be limited." Not so here. This case may end in complete relief against the local defendants alone, and it is appropriate to give now the same decision we would give if the state defendants had never been sued. Otherwise the plaintiffs become entangled in their own pleading, even though nothing of substance turns on who was named in the original complaint.

The judgment is reversed as to the state defendants and affirmed as to the local defendants. Costs to appellees.