In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-4112

ANTHONY MALONE and
BARBARA SIMS-MALONE, on
behalf of ANTHONY DELANCE
MALONE, deceased son,

*Plaintiffs-Appellants*,

*v.*

ROBERT NIELSON, Superintendent,
Bloomington Public Schools, District No.
87, individually and in his official
capacity, BECKY FRANCOIS, Director of
Special Education, Bloomington Public
Schools, District No. 87, individually
and in her official capacity, CINDY
HELMERS, High School Principal,
Bloomington Public Schools, District
No. 87, individually and in her official
capacity, et al.,

*Defendants-Appellees*.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 C 1137—**Michael M. Mihm**, *Judge*.

_____

SUBMITTED APRIL 26, 2006—DECIDED JANUARY 22, 2007

_____

Before COFFEY, RIPPLE and ROVNER, *Circuit Judges*.

PER CURIAM. Anthony Malone and Barbara Sims-Malone brought this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and 42 U.S.C. § 1983, alleging that the Illinois State Board of Education and various administrators and teachers employed by the Board of Education of the Bloomington Public Schools, District No. 87 ("District"), violated their son's right to a free and appropriate public education under the IDEA. The district court granted the defendants' motion to dismiss because the Malones failed to state a claim under either the IDEA or § 1983. The Malones appeal that decision.

# I

Given the procedural posture of the case, we draw all inferences in the light most favorable to the Malones, and our review of the dismissal is de novo. *See Mosely v. Bd. of Educ. of Chicago*, 434 F.3d 527, 529 (7th Cir. 2006).

From 1999 through his graduation in 2003, Anthony DeLance "Lance" Malone attended high school in the Bloomington Public Schools District No. 87 in Bloomington, Illinois. Before high school, Lance had been diagnosed with specific learning disabilities as defined in 105 ILCS 5/14-1.03a, and was qualified as a child with a disability within the meaning of 105 ILCS 5/14-1.02 and 20 U.S.C. § 1401(3)(A). Accordingly, while enrolled in high school, he was entitled to receive special educational services through an Individualized Education Program ("IEP") developed by the District in consultation with his parents. *See* 20 U.S.C. § 1414(d).

The Malones claim that, beginning with the 1999-2000 school year, the District ignored or flouted many provisions of Lance's IEP and the procedural safeguards of the IDEA. According to the Malones, the defendants deprived Lance of instruction by removing him from one of his classes for a three-week period and placing him in detention for that class period, by suspending him for thirty-one days in a single year, by refusing to let him make up missed work and by refusing to modify tests and assignments and to provide one-on-one help in accordance with his IEP. On one occasion, Lance was barred from the cafeteria for three weeks and placed in detention during his lunch period; in detention, he was given a cold sandwich and water instead of a cafeteria meal. The defendants, moreover, failed to notify the Malones about these disciplinary actions or to review the IEP to develop a behavior intervention plan. The Malones also allege that the defendants isolated Lance from other students by placing his desk in a corner, excluding him from group assignments, enforcing campus rules that were relaxed for others and "interfering" with his ability to participate in extra-curricular activities such as basketball. Finally, the Malones allege that the defendants made hurtful comments to Lance, such as telling him that none of his teachers wanted him in their classes because he smelled.

Beginning in March 2000, the Malones wrote a number of letters to District officers protesting this treatment, and, in October 2000, they were granted a hearing before an Impartial Hearing Officer ("IHO") licensed by the state. At around the same time, the Malones took Lance to a psychologist who diagnosed him with anxiety and depression. The Malones claim that the IHO ordered the District to pay for counseling for Lance, but no order ever was issued.

None of the parties offer any explanation as to what happened to derail the proceedings. The next thing we know is that, in January 2002, a new IHO was appointed to handle Lance's case, and the Malones asked for another hearing. The parties met for a prehearing conference in March, and Lance began twice-monthly sessions with the psychologist. After that, a series of postponements initiated by both sides delayed the hearing, which never did occur.

Lance turned 18 in September 2002; he graduated from the high school the following June, and then, in August 2003, he died.[1] The defendants moved the IHO to dismiss the case in October 2003. After allowing the Malones a chance to respond, the IHO granted the motion. The IHO reasoned that he was empowered to order only prospective relief, and he could not make factual findings in the absence of the power to grant relief.

The Malones then turned to the district court, claiming a right of action on behalf of Lance's estate. They seek reimbursement under the IDEA for expenses Lance incurred for psychological counseling, for "medical services" and for transportation to and from his psychological and medical appointments, *see* R.60 at 9-10; they also seek to recover attorneys' fees and costs. Additionally, the Malones claim that Lance is entitled under § 1983 to "compensatory damages," damages for "emotional distress," punitive damages and attorneys' fees and costs, *id.* at 19.

The district court dismissed the Malones' complaint. It held that the Malones had failed to state a claim because the IDEA does not provide for money damages. The

---

[1] The cause of Lance's death is not a matter of record.

court acknowledged that the Malones seek "reimburse-ment" rather than "damages" but concluded there is no distinction in this case "because there is nothing in the Complaint to show that Defendants were obligated under the agreed-upon IEP to provide Lance with counseling services." R.86 at 7-8. The court also held that the Malones fail to state a claim under § 1983 because, in its view, a plaintiff cannot "achieve any relief under Section 1983, based solely on an underlying violation of the IDEA." *Id.* at 13.

## II

Before turning to the merits of the IDEA and § 1983 claims, we must address the threshold issue of whether the Malones may continue to litigate this action. The Malones brought this action "on behalf of Anthony DeLance Malone, deceased, by and through their attor-ney . . . ." R.60 at 3. However, the Malones are no longer represented by counsel, but are proceeding pro se in this appeal. Although individuals have a right to proceed pro se, *see* 28 U.S.C. § 1654; *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) (per curiam), admin-istrators do not act on behalf of themselves, but on behalf of all of the beneficiaries of an estate. Consequently, if the administrator is not the sole beneficiary of the estate, then he or she may not represent the estate in court. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Iannaccone v. Law*, 142 F.3d 553, 559 (2d Cir. 1998).[2]

---

[2] This court has not decided whether an administrator or executor who is the sole beneficiary of an estate without creditors may appear pro se on its behalf.

In the present case, Lance died intestate and, under the Illinois rules of intestate succession, the estate must be distributed to the parents and siblings of the decedent in equal parts. *See* 755 ILCS 5/2-1. The Malones, as nonlawyers, may not represent the interests of Lance's four brothers and sisters. *See Mosely*, 434 F.3d at 532; *Navin*, 270 F.3d at 1149. Therefore they cannot proceed pro se on any claim in which the estate is the real party in interest.

The § 1983 claim set forth in the Malones' complaint is such a claim. With respect to the § 1983 claim, this court has held that whether the "claim survives the tort victim's death . . . follows state law." *Hutchinson v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997). In Illinois, personal injury suits survive the plaintiff's death and inure to the benefit of the plaintiff's estate. *See Anderson v. Romero*, 42 F.3d 1121, 1123 (7th Cir. 1994); 755 ILCS 5/27-6.[3] The § 1983 claim, therefore, properly belongs to Lance's estate, and the Malones may not pursue this claim on behalf of Lance's estate without securing the services of counsel.

The same is true of the claim for reimbursement under the IDEA. As explained by the Fourth Circuit, standing to pursue a reimbursement claim belongs to that party, whether parents or child, "who actually expend[ed] resources." *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 299 (4th Cir. 2005). The Malones' complaint avers that it was Lance, not they, who incurred the expenses for psychological counseling services, medical services and transportation, resulting from the defendants' actions. Because Lance is the one who "incurred the expense and suffered the subsequent monetary injury," the claim for reim-

---

[3] The only exception to this rule is a claim for defamation.

bursement belonged to Lance, and, after his death, to his estate. Consequently, the Malones may not pursue the IDEA reimbursement claim on behalf of the estate without representation by counsel.

### Conclusion

The claims presently before the court properly belong to Lance's estate. Because the Malones may not proceed pro se on those claims, we will grant the Malones sixty days to obtain counsel to represent the interests of the estate. If the Malones fail to secure counsel within 60 days of issuance of this opinion, the appeal will be dismissed.[4]

IT IS SO ORDERED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[4] We express no opinion on the ultimate merits of either the reimbursement claim under the IDEA or the claim for damages under § 1983.