In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3012

MATTHEW STANEK, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ST. CHARLES COMMUNITY UNIT
SCHOOL DISTRICT #303, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cv-3106 — **John W. Darrah**, *Judge*.

SUBMITTED FEBRUARY 23, 2015— DECIDED APRIL 9, 2015

Before WOOD, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*.   Matthew Stanek, now 20 years old, is autistic. While he was a high school student in the St. Charles Community Unit School District #303 ("the District"), he received special-education services. Although he is now in college, he and his parents, Bogdan and Sandra Stanek, still have some accounts to settle with the District.

Invoking their rights under the federal Constitution and several laws, they have sued both the District and various administrators and teachers for failing to provide necessary educational services to Matthew before his graduation. The district court dismissed the action against Bogdan and Sandra on the theory that they lack standing to sue. Although Matthew did have standing, the court dismissed his case for failure to sue an appropriate party. We conclude that some of these rulings do not withstand scrutiny. We therefore vacate the dismissal in part and remand for further proceedings.

**I**

Our recitation of the facts relies upon the Staneks' complaint, accepting as true their factual allegations and drawing all reasonable inferences in their favor. See *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Matthew was an A and B honors student through his sophomore year in the District. He achieved this performance with the help of the accommodations specified in his Individualized Education Program ("IEP"), which provided for a variety of services to address his social and communicative deficits. For example, it allowed him extra time to complete tests and homework and required teachers to provide him with study guides. But when Matthew entered his junior year of high school, several of his teachers stopped giving him study guides or extra time. They justified this action with the argument that it was wrong to provide study guides in advanced classes and that the extra time hurt rather than helped Matthew. At the same time, the teachers pressured him to drop his advanced-placement and honors courses, asserting that these classes would be too difficult.

Without the measures specified in the IEP, Matthew started receiving failing grades in the AP and honors classes, but he refused to drop them. Concerned, Bogdan and Sandra scheduled a meeting at the school to discuss the situation. That only made matters worse: some of Matthew's teachers began neglecting to record good grades he had earned and recording grades lower than those he actually had earned. These teachers also refused to give Matthew credit for completed work and ignored his questions about his assignments. Matthew became distressed and anxious, and he began to suffer headaches and nausea and to miss school. His parents were forced to hire a tutor to compensate for the periods when he was out of school or too distraught to learn. School administrators also began ignoring Bogdan and Sandra's requests for Matthew's educational records and refused to meet with them.

Six months into his junior year, Matthew came due for a mandatory special-education reevaluation. By law the District was required to obtain Bogdan and Sandra's consent to proceed with the reevaluation. See 34 C.F.R. § 300.300(c). But by then they did not trust his teachers, and so they refused to consent. Unable to hold the reevaluation meeting, the school administrators filed an administrative complaint to overrule the need for parental consent. See *id.* § 300.507(a). The three Staneks responded with a cross-complaint alleging that the District and several teachers and administrators had denied educational services to Matthew and had discriminated and retaliated against him and his parents. Mediation proved fruitless, and eventually the hearing officer dismissed the Staneks' complaint for failure to comply with prehearing requirements. By then Matthew was 19 years old and in college. As we understand matters, however, he still

would have been able to take advantage of some services from the District despite that fact, and he was financially injured because the District's actions had forced his parents to hire the tutor.

## II

The Staneks turned to state court, where they sought review of the hearing officer's decision as well as relief against the District and several administrators and teachers in their individual and official capacities under 42 U.S.C. § 1983, invoking the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 to 1418, the Rehabilitation Act, 29 U.S.C. §§ 701 to 796*l*, the Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213 ("ADA"), and the Fourteenth Amendment. They contended that the defendants had denied Matthew a "free appropriate public education," discriminated against him based on his disabilities, retaliated against him based on his parents' advocacy, denied the parents their right to participate in Matthew's special-education process, and retaliated against the parents for asserting that right.

The defendants removed the suit to federal court and promptly filed a motion to dismiss. They argued that the Staneks have sued the wrong parties, that the parents are trying to litigate claims belonging to Matthew, and that the parents fail to state any claim of their own. They did not contend, however, that Matthew fails to state a claim for relief, assuming that the complaint names proper defendants. And although the individual defendants asserted qualified immunity as a defense to the plaintiffs' individual-capacity theories under § 1983, none of the defendants raised lack of exhaustion as an affirmative defense.

The district court for the most part was persuaded by the defendants' arguments. Characterizing the lawsuit as one brought by the parents "only on behalf of Matthew," the court first concluded that Bogdan and Sandra lacked standing to sue. It reasoned that their only possible claim arose under IDEA, but their right to press that claim had reverted to Matthew when he turned 18 years old. It dismissed each of the individual defendants in their individual capacities. With respect to the statutory claims, the court held that the plaintiffs had no right of action against individual persons; with respect to the constitutional claim, the court held that the defendants were entitled to qualified immunity. Turning to the official-capacity claims, the court found that the inclusion of the individual defendants was "redundant and unnecessary" since their employer, the District, is a named defendant "who has had an opportunity to respond to the suit." Nevertheless, the court did not permit the suit against the District to go forward, because it thought that the school *board*, not the *District*, was the "proper party to be sued." It gave Matthew, though not his parents, leave to file an amended complaint against the board within 30 days. When Matthew chose not to do so, the court closed the case.

### III

All three Staneks have appealed. The defendants assert that the principal issue on appeal is whether the district court abused its discretion in terminating the lawsuit after Matthew ignored the court's deadline for filing an amended complaint. They analogize the court's order to a dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b). That is both incorrect and, in this case, a self-defeating strategy. If we thought that the district court had imposed

such a drastic sanction without an explicit warning, we would probably conclude that the court abused its discretion. See *Sroga v. Huberman*, 722 F.3d 980, 982–83 (7th Cir. 2013); *Gabriel v. Hamlin*, 514 F.3d 734, 737 (7th Cir. 2008). But the district court in fact simply followed decisions from this court encouraging district judges to allow time to file potentially curative amendments before closing a good lawsuit with a defective complaint. See *Williams v. Wahner*, 731 F.3d 731, 734 (7th Cir. 2013). In this instance, the court had dismissed a good portion of the Staneks' complaint *with prejudice*, plainly foreclosing the possibility of a successful amendment to that part of the case. And only Matthew, not his parents, was invited to amend. He was under no obligation to do so, however. Like any plaintiff, he was entitled to accept the dismissal as one with prejudice and take an appeal in which he could test the legal sufficiency of his complaint. *Cf. Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 649 (7th Cir. 2014); *Furnace v. Bd. of Trs. of S. Ill. Univ.*, 218 F.3d 666, 669–70 (7th Cir. 2000). Matthew's choice not to file an amended complaint is irrelevant to this appeal, and so we move on to the Staneks' arguments.

A

The Staneks first contend that the district court improperly dismissed the District in the belief that a school district is not itself amenable to suit and can be sued only through its board. We agree with the Staneks here. IDEA designates the "local educational agency" as the proper defendant. 20 U.S.C. § 1413. Illinois, in turn, defines the "local educational agency" for purposes of IDEA to include a school board or school district. 20 U.S.C. § 7801(26); 105 ILCS 105/3(d); see also 20 U.S.C. § 1401(19)(A). We have not faced the question

whether an Illinois school district may be sued in its own name, but see 105 ILCS 5/10-2 (providing that the "directors of each district" may sue and be sued), though we have adjudicated many special-education suits brought by and against school districts in Illinois, see, *e.g.*, *M.B. v. Hamilton Se. Schs.*, 668 F.3d 851 (7th Cir. 2011*); McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564 (7th Cir. 2004); *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798 (7th Cir. 2004); *Rodiriecus L. v. Waukegan Sch. Dist. No. 60*, 90 F.3d 249 (7th Cir. 1996); *Gary A. v. New Trier High Sch. Dist. No. 203*, 796 F.2d 940 (7th Cir. 1986). We freely acknowledge that the unexamined assumptions of prior cases do not control the disposition of a contested issue. See, *e.g.*, *Dahlstrom v. Sun-Times Media*, 777 F.3d 937, 945 (7th Cir. 2015). This case, however, does not require us to break any new ground. The Staneks named as a defendant the superintendent in his official capacity, in which he "stands in for the agency he manages"—in this case the school board. See *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (abrogated on other grounds by *Legal Servs. Corp. v. Velazquez*, 531 U.S. 536 (2001)); see also *Malone v. Nielson*, 474 F.3d 934 (7th Cir. 2007) (lead defendant is superintendent in official capacity, and neither district nor school board are named defendants); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) ("Official capacity suits are actions against the government entity of which the official is a part."). The defendants more or less concede this by making the circular argument that all of the individual defendants named in their official capacity—the superintendent among them—are "redundant and unnecessary parties" because their "employer, the School District, is a named party." The court therefore should not have cast aside the suit, inso-

far as it ran against the District or the school board, so quickly.

B

1

With at least one proper plaintiff and proper defendant, we are now ready to consider whether the Staneks' complaint states a claim for relief. We start with Matthew's statutory claims. Matthew contends that the complaint sufficiently alleges that the District denied him a free appropriate public education. Again, we agree with him. There is more than enough detail in this complaint to put the defendants on notice. Matthew alleges that his school denied him the study guides and extra time to complete tests and homework that his IEP required, and that as a result he began failing classes in subjects in which he had received As and Bs in previous years. That is sufficient to state a claim for a denial of a free appropriate public education. See 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 189 (1982) ("[T]he definition also requires that such instruction and services … comport with the child's IEP."); *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 821–22 (9th Cir. 2007). It is also easy to envision an appropriate remedy, since the District can be compelled to provide current services to address deficits caused by past unlawful conduct. See *McCormick*, 374 F.3d at 568 n.1.

Matthew also argues that it was error to dismiss his discrimination claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the ADA, 42 U.S.C. § 12132. A disabled plaintiff making a discrimination claim under either § 504 or

the ADA must allege that he was qualified under the statute for a particular program and was discriminated against because of his disability. See *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008); *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999); see also *Jaros v. Ill. Dep't of Corrs.*, 684 F.3d 667, 671–73 (7th Cir. 2012). It is true that something more than a bare violation of IDEA is required to establish disability discrimination in an educational program. *CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 529–30 (7th Cir. 2014); *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 528–29 (4th Cir. 1998). But Matthew has alleged enough to state a plausible claim. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). He says that because of his autism and the extra attention he needed, his teachers tried to push him out of their classes, refused to comply with his IEP, and even required him to work on group projects when his disability prevents him from being able to work with peers. This treatment caused him extreme anxiety, loss of self-esteem, emotional stress, and physical pain, and prevented him from attending school every day, resulting in lost educational opportunity. At this stage in the litigation, that is sufficient. See *CTL*, 743 F.3d at 529–30; *Sellers*, 141 F.3d at 528–29.

Matthew's retaliation claim, on the other hand, was correctly dismissed. Matthew, like his parents, contends that the District retaliated after Bogdan and Sandra asserted their rights under the Rehabilitation Act and the ADA. The question here is whose rights Matthew is trying to assert. Both the Rehabilitation Act and the ADA make it unlawful to retaliate for the exercise of rights conferred by those statutes. See *Cassimy v. Bd. of Educ. of Rockford Pub. Schs. Dist. #205*, 461 F.3d 932, 938 (7th Cir. 2006). Matthew's allegation focuses on actions the District took against his parents after they at-

tempted to assert their own statutory rights concerning his education. Crucially, Matthew does not say that the District retaliated against him based on any protected action that *he* took. Without such an allegation, he has not stated a claim for retaliation. See *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 867–68 (2011) (holding that employer's adverse action taken against third party is retaliation against employee, not third party); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 374 (5th Cir. 2008) (rejecting third-party retaliation claims under ADA and Age Discrimination in Employment Act). This does not, however, foreclose a retaliation claim by Bogdan and Sandra, as we will see.

2

We turn next to Bogdan and Sandra's statutory claims. They begin by arguing that the dismissal of their IDEA claim was premature. They urge that they are real parties in interest because, contrary to the district court's understanding, the District also violated their rights under statute, not just Matthew's. A careful reading of the complaint shows this to be true. To state a claim under IDEA they needed to allege that the District denied them the procedural rights that IDEA guarantees to parents, including participation in meetings and access to records, see 20 U.S.C. §§ 1412(a)(6); 1414(d), (e); 1415(a), (b)(1); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524, 531 (2007); *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 532 (7th Cir. 2006), and that the District's actions caused Matthew to lose an educational opportunity, see *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001). Bogdan and Sandra allege that the District intentionally kept them from participating in special-education procedures when teachers and administrators

ignored their phone calls and attempts to schedule meetings and ignored eight requests for Matthew's records. These actions, they allege, enabled the school to continue neglecting Matthew, causing him emotional distress and academic loss. This is enough to state a claim that their own rights under IDEA were violated. We have presumed that IDEA authorizes a claim for reimbursement when resources are expended to compensate for a school district's noncompliance with an IEP. *Malone*, 474 F.3d at 935–37. And "standing to pursue a reimbursement claim belongs to that party, whether parents or child, 'who actually expend[ed] resources.'" *Id.* at 937. Bogdan and Sandra allege that they paid for tutors for Matthew, giving them an easily observable stake in this case.

The district court realized that Bogdan and Sandra at one time had their own rights, but it thought that those rights shifted to Matthew when he turned 18. The dispute on this point centers on a Delegation of Rights form that Matthew executed in April 2013, before this lawsuit was filed; the form authorized his parents to act for him. Under IDEA, states may provide that all rights assigned to a parent under the statute will become rights of the child receiving services when that child reaches the age of majority. See 20 U.S.C. § 1415(m). Illinois has directed that "all rights accorded to the student's parents" under IDEA "transfer to the student" except in limited circumstances. 105 ILCS 5/14-6.10; 23 ILL. ADMIN. CODE § 226.690. One of those circumstances is the execution by the adult child of a Delegation of Rights, the form which is prescribed by statute. 105 ILCS 5/14-6.10. This is the form Matthew executed.

Bogdan and Sandra contend that Matthew's delegation of rights permits them to continue pursuing their claim for re-

dress of violations of their rights under IDEA. The district court, with encouragement from the defendants, decided to split hairs and hold that the delegation did not include Matthew's right *to sue*. It reasoned that the form speaks only to "decisions concerning my education," which, it thought, do not include litigation. Neither the court nor the defendants cite any authority for this interpretation. To our knowledge no Illinois court has spoken on the subject. But this is a written document, and we are free to construe it for ourselves.

Doing so, we are not persuaded by the district court's position. Under the statute, Illinois directs that "all rights" of the parent revert to the child absent a delegation, and the defendants do not assert that the state intended—without saying so and in the very same statutory provision—to prescribe language for a form delegation which would give the parents so little. The defendants' reading would not even give to parents the procedural rights they once held and would need to exercise their child's right to make educational decisions. That leads to the second point: IDEA is enforced, when necessary, through litigation, and we have no reason to think that the Illinois statute was intended to permit a child receiving IDEA benefits to give control over educational decisions to a parent but not allow the parent to follow through with litigation if necessary. It is telling, moreover, that the defendants have never asserted that Matthew's participation in this lawsuit on his own behalf constitutes an implicit termination of his written delegation to his parents.

Bogdan and Sandra also sufficiently allege that the District retaliated against them by shutting them out of the special-education process, in violation of the Rehabilitation Act and the ADA. The circuits that have addressed the question

agree that these statutes protect a parent's request for a school to accommodate a child's disability. See, *e.g.*, *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 & n.4 (6th Cir. 2013) (collecting cases); *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007) (concluding that parent can sue under Rehabilitation Act and ADA "at least insofar as she is asserting and enforcing the rights of son and incurring expenses for his benefit"). Bogdan and Sandra do not catalog in their complaint the adverse actions taken against Matthew as a result of their requests, but they do allege that the school froze them out after their requests. This is enough. See *Mosely*, 434 F.3d at 533–34. As an aside, we note that the defendants assert that Bogdan and Sandra have attempted, but failed, to claim that the District discriminated against them personally. We do not read their complaint to encompass a claim for discrimination, in contrast to retaliation. Only Matthew has alleged discrimination.

3

We turn next to all three plaintiffs' invocation of 42 U.S.C. § 1983. The district court construed that claim broadly to include both constitutional and statutory claims. It concluded that § 1983 cannot be used to enforce IDEA, the Rehabilitation Act, or the ADA. This conclusion, at least with respect to IDEA, was incorrect. It is true that the federal courts of appeal are split on whether parties can bring claims under § 1983 for violations of IDEA. Compare *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (assuming availability of § 1983 for IDEA violation); *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 n.3 (5th Cir. 1990) (§ 1983 actions permissible); and *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987) (same), with *A.W. v. Jersey City Pub. Schs.*, 486 F.3d

791, 803 (3d Cir. 2007) (en banc) (IDEA's comprehensive remedial scheme forecloses § 1983 actions); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 28 (1st Cir. 2006) (same); *Robb v. Bethel Sch. Dist.*, 308 F.3d 1047 (9th Cir. 2002) (same); *Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268 (10th Cir. 2000) (same); and *Sellers*, 141 F.3d at 529 (same). Some circuits have been internally inconsistent on the issue. See *Blanchard*, 509 F.3d at 937 (collecting cases); compare *Heidemann v. Rother*, 84 F.3d 1021 (8th Cir. 1996), and *Crocker v. Tenn. Secondary Schs. Athletic Ass'n*, 980 F.2d 382 (6th Cir. 1992), with *Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003) and *Digre v. Roseville Schs. Indep. Dist. No. 623*, 841 F.2d 245 (8th Cir. 1988).

This court, however, has come down on the side of holding that § 1983 can be an avenue for pursuing remedies under IDEA. See *Marie O. v. Edgar*, 131 F.3d 610, 621–22 (7th Cir. 1997) (concluding that plaintiffs had cognizable class-action claim under § 1983 to enforce IDEA rights, and implying that Congress intended to make § 1983 remedy available to beneficiaries of IDEA); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7th Cir. 1996) (assuming possibility of § 1983 remedy for IDEA violations). These decisions may need to be revisited in light of *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), see *A.W.*, 486 F.3d at 792, but this is not the time to do so, as neither the district court nor the defendants relied on them. On the other hand, our sister circuits have uniformly held that § 1983 cannot be used to obtain damages under the Rehabilitation Act or the ADA. See *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012) (Title I of ADA); *Latasha v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 456–57 (5th Cir. 2010) (ADA and Rehabilitation Act); *M.M.R.-Z v. Puerto Rico*, 528 F.3d 9, 13 n.3 (1st Cir. 2008) (ADA); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010–11 (8th Cir. 1999)

(en banc) (Title II of ADA); *Lollar v. Baker*, 196 F.3d 603, 608–10 (5th Cir. 1999) (Rehabilitation Act); *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (Rehabilitation Act and ADA).

We think it best to refrain from deciding at this time whether any of the Staneks might be able to seek recourse under § 1983. It is not clear that resolution of this question will make any practical difference in this case. Furthermore, the question of liability comes first, and unless the Staneks muster sufficient evidence during discovery to survive a motion for summary judgment on their statutory claims, the scope of available remedies is unimportant. We leave this issue for the district court to revisit and develop on remand, if necessary.

4

Finally we turn to the individual defendants other than the superintendent. The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District. See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). The district court was also correct to dismiss them in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA. See *Walker*, 213 F.3d at 346 (explaining that "as a rule there is no personal liability under Title II" of the ADA); *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5, 798 n.7 (7th Cir. 1999) (finding no individual liability under ADA, and explaining that Rehabilitation Act is nearly identical); see also *Emerson v. Thiel Coll.*, 296 F.3d 184, 189–90 (3d Cir. 2002) (Title III of ADA and Rehabilitation Act); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir.

2001) (ADA and Rehabilitation Act); *Alsbrook*, 184 F.3d at 1005 n.8 (ADA); *Hiler v. Brown*, 177 F.3d 542, 546–47 (6th Cir. 1999) (Rehabilitation Act).

We draw the line, however, at the IDEA claims, which should have gone forward at this stage. We have not found a decision from any circuit holding that individual school employees cannot be personally liable for violating IDEA. See *Padilla*, 233 F.3d at 1274 (declining to "address whether the IDEA imposes individual liability or permits damage awards"). We offer no opinion on the issue now, because it is relatively undeveloped. It was also premature to dispense with the Staneks' § 1983 claims on qualified-immunity grounds with such an undeveloped record. See *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 357 (7th Cir. 2005).

**IV**

We have considered the Staneks' remaining contentions and conclude that none has merit. The judgment is AFFIRMED as to Matthew Stanek's claim of retaliation under the Rehabilitation Act and the ADA, all plaintiffs' official-capacity claims against the individual defendants except for Superintendent Donald Schlomann, the individual-capacity claims arising under the Rehabilitation Act and the ADA, and any further claims not addressed explicitly in this decision. In all other respects the judgment is VACATED, and the case is REMANDED for further proceedings consistent with this decision.