In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3849

ADRIANNA BROWN, et al.,

*Plaintiffs-Appellants,*

*v.*

COLUMBIA SUSSEX CORPORATION, et al.

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-cv-00107—**Philip P. Simon**, *Chief Judge.*

ARGUED SEPTEMBER 22, 2011—DECIDED DECEMBER 15, 2011

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.*   The underlying litigation in this case concerns a host of plaintiffs-appellants' civil rights and breach of contract claims against defendants-appellees—the owners of Baton Rouge Marriott and an individual employee of the Marriott (collectively, "Marriott") . Throughout the pre-trial discovery of this litigation, 224 of the 268 plaintiffs continually missed both

formal and informal deadlines.[1] As a result, all but 44 of the plaintiffs had their claims dismissed by the district court as a discovery sanction pursuant to Fed.R.Civ.P. Rule 37(b). Appellants constitute 53 of the 224 unattentive plaintiffs.[2] For the reasons set forth below, we affirm the district court's dismissal of appellants' claims.

## I. Background

For 20 years, appellant James Piggee and his organization Giving Education Meaningful Substance ("G.E.M.S.") has been taking groups of African American high school students on tours of historically black universities to make them more aware of their academic opportunities. In April 2008, Piggee planned a trip to Louisiana and Texas for a group of somewhere between 149 and 268 students. In preparation for that trip, Piggee reserved 41 rooms at the Marriott in Baton Rouge. A day or two later, Marriott canceled the reservation. Appellants allege that Marriott's decision to cancel was racially motivated. As a result of the cancellation, appellants did not have a place to stay in Baton Rouge and had to drive through the night to their next destination in Texas.

---

[1] Despite the numerosity of the plaintiffs, no claims were brought as a class action.

[2] Originally, all 224 of the dismissed plaintiffs were part of the appeal currently before this court. While the appeal was pending, however, appellants' counsel filed a motion to voluntarily dismiss 171 of the appellants after discovering that they should not have been a part of the case to begin with.

Based on these allegations, Piggee filed suit in the Northern District of Indiana for himself, the students, and the chaperones that attended the April 2008 trip. In December 2009, Marriott served extensive discovery requests on all 268 plaintiffs, including requests for the production of documents, responses to interrogatories, and responses to Fed.R.Civ.P. Rule 36 requests for admission. In January 2010, appellants asked for their first extension. They initially asked Marriott for a 45-day extension, but before receiving a response, they requested a 60-day extension from the court, which was granted without objection. The new deadline of March 29, 2010 came and went without any production or response from appellants. On April 6th, Marriott wrote a letter to appellants' counsel asking when to expect a response to the discovery requests, but received no answer. Appellee sent another letter requesting production on April 13th, and in response to this second letter, appellants emailed Marriott requesting an extension until May 31, 2010. The third deadline once again passed with no response from appellant.

On June 16, 2010, five months after the original discovery deadline, Marriott filed a motion to compel a response to discovery. The district court granted the motion with respect to the interrogatories and document requests, but noted that requests for admission cannot be compelled as these requests are deemed admitted after 30 days of no response. The court ordered that appellants respond to discovery requests by July 16, 2010. On the date of the fourth deadline, appellants filed a Motion for Extension of Time, seeking an extension to July 23, 2010. The

court did not grant the motion because of technical problems with appellants' motion. Thus, for a fourth time, appellants did not meet their deadline. As a result, Marriott filed a motion for sanctions and contempt, seeking dismissal and payment for Marriott's expenses, including attorney's fees.[3] The court declined to dismiss, but granted Marriott's request for expenses as a sanction against appellants. The court also granted appellants' second Motion for Extension of Time, giving them until August 17th to comply with the court's order. This extension was granted in part because of plaintiff-counsel's representations that he was a sole practitioner, that he only had one administrative assistant, that he had been working round-the-clock to comply with the court's orders, and that he had interviewed a law firm to help with the discovery requests. In granting appellants' motion, the district court made clear that this was the "final extension" that would be granted, and that further requests would be "viewed with disfavor." In addition, a magistrate judge's Findings, Report, and Recommendation regarding Marriott's motion for sanctions listed the court's

---

[3] Shortly after filing their motion for sanctions, Marriott also filed a motion for summary judgment based on the requests for admission, which were deemed admitted due to appellants' lack of a response. When the district court dismissed the claims of the appellants before this court, it also granted a motion to withdraw default admissions by the plaintiffs whose claims were not dismissed by the court (and are therefore not before this court on appeal). Due to the withdrawal of the default admissions, the summary judgment motion was rendered moot.

sanctioning options if appellant failed to respond to discovery. These options included the possibility of dismissal.

For the fifth and final time, appellants failed to meet their discovery deadline. On August 20, 2010, Marriott filed another motion for contempt and sanctions, naming over 200 plaintiffs that had not yet responded to the appellees' discovery requests. In plaintiff-counsel's September 27th response to this motion, he indicated that 60 plaintiffs had responded to the discovery requests and that he had not received a response from the others. He also sought class certification due to the unmanageability of the discovery requests. During oral arguments for that motion, plaintiff-counsel acknowledged that he had only communicated with roughly 75 to 100 of the plaintiffs, which led the district court to concluded that the majority of the plaintiffs may not have even been aware that the suit had been filed on their behalf.

On November 10, 2010, in its ruling on Marriott's motion for sanctions, the district court concluded that the Fed.R.Civ.P. 37(b) sanction of dismissal was necessary in the face of appellants' willful delay and avoidance of Marriott's requests for discovery. The district court based this decision on appellants' pattern of delay and non-compliance, which included the following actions or omissions: 1) appellants' disregard of two of the court's orders to compel discovery; 2) appellant's lack of response when faced with the less severe sanction of payment of defendants' expenses; 3) appellants' lack of a showing that additional sanctions would be effective

in forcing them to comply with the court's orders; 4) plaintiff-counsel's lack of communication with the majority of the plaintiffs; and 5) plaintiff-counsel's lack of secured co-counsel, which, the court noted, would be a difficult task given the posture of the case at the time of dismissal.

On December 10, 2010, appellants filed their notice of appeal from the district court's decision to dismiss their claims. Our preliminary review of appellants' appeal indicated that the district court's order may not have been a final judgment under 28 U.S.C. § 1291[4] ("§ 1291"), and on December 21, 2010, we ordered appellants to file a Jurisdictional Memorandum, due on January 4, 2011. One day before the deadline, appellants returned to the district court and filed a motion requesting an entry of final judgment pursuant to Fed.R.Civ.P. Rule 54(b) and 58(d).[5] The next day—the due date for the Jurisdictional Memorandum—appellants filed a motion entitled "Routine Motion For An Extension of Time to File Jurisdic-

_____

[4] Section 1291 states, "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

[5] Rule 54(b) states that if an action contains more than one claim for relief—through either multiple claims from one party, multiple parties to a claim, or both—"the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 58(d) allows a party to request that a Rule 54(b) judgment be set out in a separate document. Fed. R. Civ. P. 58(d).

tional Memorandum," which was granted. On January 7, 2011, the district court granted appellants' Rule 54(b) motion, finding that appellants' claims are separate from the claims of the remaining plaintiffs, the decision dismissing appellants' claims is final, and there is no just reason for delay. A final judgment was therefore entered.

Appellants subsequently filed their Jurisdictional Memorandum with this court, which advised the court of the case's procedural history and concluded that the district court's Rule 54(b) motion rendered the jurisdictional question moot. The next day, this court issued an order stating, "On consideration of the 'JURISDICTIONAL STATEMENT' filed by plaintiffs-appellants on January 11, 2011, IT IS ORDERED that briefing will proceed."

## II. Discussion

### A. Jurisdiction

Before we turn to the relatively straight forward matter of the propriety of appellants' dismissal, we must address Marriott's assertion that we lack jurisdiction to decide this appeal in the first place. Whether we have jurisdiction depends on the interaction between three statutory rules: Congress' conferral of jurisdiction on this court under § 1291, Rule 54(b) of the Federal Rules of Civil Procedure ("Rule 54(b)"), and Rule 4(a) of the Federal Rules of Appellate Procedure ("Rule 4(a)"). To start, § 1291 generally limits our jurisdiction to the review of only "final decisions" of the federal district

courts. *See Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin*, 760 F.2d 177, 180 (7th cir. 1985); 28 U.S.C. § 1291. Decisions are final when they "end[] the litigation and leave[] nothing to be decided in the district court." *United States v. Ettrick Wood Prods., Inc.* 916 F.2d 1211, 1216 (7th Cir. 1990). Generally, if an action involves either multiple parties or one party with multiple claims, the dismissal of some but not all of the parties or claims is not immediately appealable; the parties or claims that still exist prevent the order from being "final." *Id.* at 1216-17; Fed.R.Civ.P. Rule 54(b). Rule 54(b), however, empowers a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but only if the court "expressly determines that there is no just reason for delay," Fed.R.Civ.P. 54(b), a process commonly referred to as "certification." *See, e.g., Parish v. City of Elkhart*, 614 F.3d 677, 679 n. 2 (7th Cir. 2010). The Supreme Court has established that in addition to the absence of any reason for delay, a certifiable claim must be separable from the remaining claims in the litigation and the decision entered as to those claims must meet the definition of finality under § 1291—meaning there is nothing left to be decided by the district court as to the certified claims—in order for a Rule 54(b) ruling to be proper. *See ODC Communications Corp. v. Wenruth Investments*, 826 F.2d 509, 511-12 (7th Cir. 1987) (citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980)).

Marriott argues that § 1291 and Rule 54(b), in concert with the requirements of Fed.R.App.P. Rule 4(a)(1) ("Rule 4(a)(1)"), clearly prevent this court from exercis-

ing jurisdiction over this appeal. Rule 4(a)(1) requires that an appellant file a notice of appeal within 30 days of the judgment from which that party is appealing. Marriott correctly asserts that when the district court dismissed appellants' claims on November 10, 2009, the entire case was not terminated, since there were remaining plaintiffs litigating their claims. Those plaintiffs continue to litigate to this day. Thus, the district court's November 10th decision, which was not accompanied by a Rule 54(b) judgment, was not a final judgment under § 1291 and was not immediately appealable. *See Ettrick Wood Prods.*, 916 F.2d at 1217 ("Absent proper entry of judgment under Rule 54(b), an order that determines one claim in a multi-claim case, or disposes of all claims against one or more parties in a multi-party case, is not final and appealable."). Appellants' December 10th notice of appeal was therefore premature, since it was filed as a challenge to the November 10th nonfinal order. The district court eventually granted appellants' motion requesting a Rule 54(b) judgment on January 7, 2011, making the appellants' dismissal both final and appealable under § 1291, but appellants did not file a new notice of appeal from the January 7th order. Instead, they rested on their December 10th notice of appeal from the November 10th nonfinal order. The question, then, is whether appellants' original notice of appeal satisfies the federal appellate notice requirements under Rule 4(a)(1) despite the fact that appellants technically appealed from a nonfinal decision rather than the Rule 54(b) final judgment entered on January 7th.

Appellants argue that this court's jurisdiction is saved under Fed.R.App.P. Rule 4(a)(2). Rule 4(a)(2) provides, "A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." Appellant argues that, for the purposes of Rule 4(a)(2), the district court announced its decision to dismiss appellants' claims on November 10, 2010—the date the court ruled on Marriott's second motion for sanctions—but that its judgment was not entered until January 7, 2011—the date the court ruled on appellants' Rule 54(b) motion for entry of final judgment. The appellants' notice of appeal should therefore be considered as having been constructively filed on January 7, 2011 pursuant to Rule 4(a)(2), or so they argue. Marriott argues that Rule 4(a)(2) does not resurrect notices of appeal that were made prematurely in the context of a belated Rule 54(b) motion. This is made clear, they argue, by the Supreme Court's decision in *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.,* 498 U.S. 269 (1991).

In *FirsTier*, the plaintiff brought claims against an insurance company for refusing to pay claims submitted by the plaintiff. *Id.* at 270. The defendant filed a motion for summary judgment, and after orally granting the defendant's motion, the court asked the defendant to submit proposed findings of fact and conclusions of law, to which the plaintiff had a right to object. *Id.* at 271. Before the court accepted the defendant's proposed findings and conclusions—and thus before a final judgment was technically entered—the plaintiff filed its notice

of appeal. *Id.* at 272. Relying on Rule 4(a)(2), the Supreme Court held that the defendant's notice of appeal was timely, despite the fact that it was technically premature. *Id.* at 277. The Court interpreted Rule 4(a)(2) as "permit[ing] a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment." 498 U.S. at 276 (emphasis in original). The reasoning underlying this interpretation is that "Rule 4(a)(2) was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment." *Id.* Rule 4(a)(2) does not, however, permit "a notice of appeal from a clearly interlocutory decision—such as a discovery ruling or a sanction order under Rule 11 of the Federal Rules of Civil Procedure—to serve as a notice of appeal from the final judgment." *Id.* In *FirsTier*, Rule 4(a)(2) saved the plaintiff's premature appeal, since the bench ruling announced a decision "purporting to dispose of all of FirsTier's claims," and thus the notice of appeal was deemed filed on the date that the final judgment was actually entered. *Id.* at 277.

Marriott argues that in this case, unlike in *FirsTier*, the entry of judgment was not all that stood in the way of appellants' dismissal becoming appealable. Rather, the district court would have had to conduct a Rule 54(b) analysis or dispose of the remaining parties in order for the dismissal to become final and appealable. Thus, under Marriott's suggested framework, the order dismissing appellants' claims was a clearly interlocu-

tory order, and under *FirsTier*, an appeal from an interlocu-tory order cannot be saved by Rule 4(a)(2). Given that it has been more than 30 days since the district court's January 7, 2011 order granting appellants' motion to enter final judgment, Marriott claims that any notice of appeal now filed by appellant would be time-barred.

In light of *FirsTier*, we agree with those Circuits that have held that, generally speaking,[6] premature notices of appeal in civil cases can only ripen when under the auspices of Rule 4(a)(2), as defined by the Supreme Court in *FirsTier*. *See, e.g., Outlaw v. Airtech Air Conditioning and Heating, Inc.,* 412 F.3d 156, 160 (D.C. Cir. 2005); *United States v. Cooper*, 135 F.3d 960, 963 (5th Cir. 1998) (interpreting Fed.R.App.P. Rule 4(b), which is the equivalent of Rule 4(a)(2) for criminal cases, and is interpreted as such); *Serine v. Peterson*, 989 F.2d 371, 372-73 (9th Cir. 1993). *But see Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 587 (3rd Cir. 1999) ("[*FirsTier*] did not hold that the rule 4(a)(2) situation—announcement of a final decision followed by notice of appeal and then entry of the judgment—is the *only* situation in which a premature notice of appeal will ripen at a later date.").[7]

---

[6] The exception to this rule can be found in Fed.R.App.P. 4(a)(4)(B), which tolls an appeal during the pendency of certain post-judgment motions if a litigant's notice of appeal is filed after a final judgment has been rendered but before at least one qualifying post-judgment motion has been granted or denied.

[7] While we recognize that our interpretation is in conflict with the Third Circuit's precedent, *see Lazy Oil,* 166 F.3d at 587, we

(continued...)

Thus, we must determine whether Rule 4(a)(2) and *FirsTier* permit a premature notice of appeal to ripen upon a belated Rule 54(b) certification.

In the context of a case with multiple, separable claims, the holding of *FirsTier* could take on two meanings. The Supreme Court's warning that Rule 4(a)(2) should only apply when a decision would be appealable if immediately followed by the entry of judgment, *id.* at 276, could be interpreted to mean that nothing can stand between the decision rendered and the appealability of that decision but the ministerial task of actually entering judgment on the docket. This is the interpretation that Marriott advances. If we were to accept this strict reading, a premature appeal from the dismissal of one claim in a multi-claim suit, or one party in a multi-party suit, could not be saved by Rule 4(a)(2), since there is more for the court to do beyond the mere ministerial task of entering judgment. Specifically, the court would either have to dispose of the remaining claims or conduct a Rule 54(b) examination, in which the court would have to make specific findings of finality, separability, and a lack of just cause for delay. Alternatively, *FirsTier* can be read to hold that Rule 4(a)(2) will save a premature notice if, *regarding the claim being appealed*, the entry of judgment is all that is left for the court to do. Under this more lenient reading, the dismissal of a single claim or party in a multi-

---

[7] (...continued)
believe that the Third Circuit's reading of *FirsTier* renders its holding a virtual nullity, and thus we decline to follow it.

claim case *would be* an immediately appealable decision had the entry of judgment directly followed the dismissal. The situation would require a Rule 54(b) motion to enter that judgment, but the entry of judgment would nonetheless be all that was required for the decision to become appealable.

We have not directly confronted the question of whether a belated Rule 54(b) judgment can save a premature notice of appeal after *FirsTier*, but we have had the chance to interpret *FirsTier*, and it is clear that we have decided that the more lenient interpretation is the correct one. In *Garwood Packaging, Inc. v. Allen & Co., Inc*, we found that Rule 4(a)(2) gave us jurisdiction over an appeal from a granted summary judgment despite the fact that one of the defendants still had claims pending against it, given that all of the claims were finalized before we decided the appeal. 378 F.3d 698, 700-01 (7th Cir. 2004). Citing *FirsTier*, we reasoned that "once [a] decision is announced, a premature notice of appeal lingers until the final decision is entered." *Id.* at 701 (citing *FirsTier*, 498 U.S. 269). Thus, if finality is subsequently achieved through the disposal of all other claims, Rule 4(a)(2) can save a premature appeal from a judgment that did not dispose of all the parties in a suit. *See Garwood Packaging, Inc.*, 378 F.3d at 700-01. In the case before us, we see no reason why we should not reach the same conclusion where finality is reached through a Rule 54(b) certification rather than the disposal of all claims. *Accord In re Bryson*, 406 F.3d 284, 288 (4th Cir. 2005); *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 191-92 (5th Cir. 2002); *Clausen v. Sea-3, Inc.*,

21 F.3d 1181, 1187 (1st Cir. 1994). In either case, the district court's decision represented the end of the litigation for a certain claim or certain claims, and all that was needed for those claims to be appealable was for judgment to be formally entered, thus providing true finality. We therefore hold that, in the context of a multi-party or multi-claim suit, a premature notice of appeal from the dismissal of a party or claim will ripen upon the entry of a belated Rule 54(b) judgment under Rule 4(a)(2) and *FirsTier*. 498 U.S. at 275.

We conclude that this holding comports with the teaching of *FirsTier*. It is reasonable, we think, for an unsophisticated litigant to believe that he could appeal a court's decision to throw out his only claim despite the existence of other claims still pending. As was the case in *FirsTier*, the district court in this case "purport[ed] to dispose of all of [appellants'] claims." 498 U.S. at 277. Also similar to *FirsTier* is the lack of any prejudice to Marriott. At no point since appellants' original notice of appeal was it unclear that they were appealing the district court's dismissal of their claims. Moreover, the Rule 54(b) judgment entered by the district court in no way changed the nature of appellants' dismissal; it merely made that dismissal appealable. Not only was Marriott satisfactorily able to brief the issues of this case, but as is clear below, their defense of the district court's dismissal was successful.

This is not to say that all decisions made by a court can be prematurely appealed and subsequently revived by Rule 4(a)(2). As *FirsTier* cautions, an appeal from a

clearly interlocutory decision will not be saved by Rule 4(a)(2). *FirsTier*, 498 U.S. at 276. But a decision that functionally ends the litigation for a party can hardly be considered "clearly interlocutory." In this context, the *FirsTier* line ought to be drawn at whether a decision ends the litigation for a particular party or for a separable claim, and thus is the potential subject of a Rule 54(b) judgment, whether or not that Rule 54(b) judgment is ever actually entered. *Accord Outlaw*, 412 F.3d at 161-62 (basing its jurisdiction on the fact that the district court *could have* entered judgment on the appealed from claims using Rule 54(b)).

Before moving to the merits, it is worth noting that the district court could have entered its Rule 54(b) judgment nunc pro tunc, making the November 10, 2010 dismissal constructively appealable *as of November 10th, 2010*, thus avoiding the need for Rule 4(a)(2). *See Local-171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d 1065, 1073 (7th Cir. 1981). The fact that a failure by the district court to add a Latin addendum to its Rule 54(b) judgment could have been fatal to appellants' appeal illustrates the illogical and overly technical results that would flow from too strict a reading of Rule 4(a)(2).

## B.  Dismissal of Suits

Appellants argue that the district court abused its discretion in dismissing appellants' claims as a discovery

sanction for two reasons. First, appellants claim that their discovery violations were not willful, were not in bad faith, and did not involve fault, and thus dismissal was too severe a sanction under our precedent. Second, appellants argue that they were not adequately warned that their claims would be dismissed, which, they assert, is also required by our precedent. A district court's entry of sanctions is reviewed for abuse of discretion, while factual findings are reviewed for clear error. *In re: Thomas Consolidated Industries*, 456 F.3d 719, 724 (7th Cir. 2006).

The dismissal of a case as a Fed.R.Civ.P. Rule 37 discovery sanction should be upheld as long as a reasonable jurist could have concluded that the sanction was appropriate. *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000). Given the severity of the sanction, this court has warned that it will be vigilant in its review of Rule 37 dismissals. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). Despite the fact that the district court dismissed appellants' claims as a discovery sanction under Rule 37, both parties cite cases discussing dismissals under Fed.R.Civ.P. Rule 41(b)'s failure to prosecute provision. The standards for dismissal under Rules 41(b) and 37(b) overlap, but there are differences between the two. Under Rule 41(b), a case should only be dismissed when "there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Maynard*, 332 F.3d at 467 (quoting *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). Rule 37, on the other hand, requires a finding of willfulness, bad faith or fault on

the part of the defaulting party. *Id*; *see also Bolanowski v. GMRI, Inc*, 178 Fed.Appx. 579, 581 (7th Cir. 2006) ("Rule 37(b)(2)'s standard is willfulness, bad faith or fault, while Rule 41(b)'s requires a clear record of delay or contumacious conduct."). The difference between these two standards has caused some confusion, but we have made clear that the Rule 41(b) standard is actually a stricter standard than the Rule 37(b) standard, *In re Pansier*, 417 Fed.Appx. 565, 569 (7th Cir. 2011), and we have intimated that a finding of willfulness, bad faith or fault is only necessary if Rule 41(b)'s "clear record" of delay is not present. *See Maynard*, 332 F.3d at 468 ("[E]ven without a clear record of delay, contumacious conduct or prior failed sanctions, a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith, or fault." (internal quotation marks omitted)).

In the case at hand, the district court made a finding that appellants displayed a pattern of "willful delay and avoidance,"[8] thus meeting the Rule 37 standard of willfulness, bad faith, or fault. A comparison to relevant case law clearly illustrates that this finding was not erroneous.

---

[8]   There has been some discussion as to whether a finding of willfulness must be based on clear and convincing evidence or merely a preponderance of the evidence. *See Watkins v. Nielsen*, 405 Fed.Appx. 42, 46 (7th Cir. 2010) (citing *Maynard*, 332 F.3d at 468). This distinction is unimportant to this case, as the facts would meet either standard.

In *Aura Lamp & Lighting, Inc. v. International Trading Corp.*, for instance, we did not find an abuse of discretion when a Rule 37 dismissal[9] was based on a plaintiff's repeated failures to meet court-ordered deadlines despite several extensions, including "one final extension" and a warning that dismissal was impending. 325 F.3d 903, 904-906. While the court considered the fact that the attorney handling the appellant's case was a sole practitioner and was overwhelmed by the amount of discovery, it found that his request to find someone else to handle the case was too late at the time of dismissal. *Id.* at 908. Similarly, in *Watkins v. Nielsen*, this court held that a plaintiff's failure to meet deadlines despite several extensions, failure to heed a warning of dismissal, and submission of incomplete interrogatories warranted dismissal under Rule 37(b). 405 Fed.Appx. 42, 43 (7th Cir. 2010).

Conversely, this court found that the plaintiff in *Long* did not act with willfulness, bad faith, or fault when he missed a single court-ordered deadline because of the mistaken belief that a summary judgment motion suspended all other proceedings. *Long*, 213 F.3d at 985-87. In reaching this decision, the court explained that the "fault" portion of the Rule 37 standard is different than the "willfulness" and "bad faith" portions in that fault does not require intentional or reckless behavior, but counseled that fault "suggests unreasonable behavior"

---

[9] The court held that a dismissal on either Rule 41(b) or Rule 37 would have been appropriate. *Aura Lamp*, 325 F.3d at 907.

and it "does not include conduct that we would classify as a mere mistake." *Id.* at 987.

The appellants' discovery violations in this case are undeniably more comparable to the plaintiffs in *Aura Lamp* and *Watkins* than the plaintiff in *Long*. Unlike the plaintiff in *Long*, appellants did not make a single discovery error, and their repeated missteps were not explainable by a reasonable misunderstanding. Appellants missed five discovery deadlines and violated two court orders. They completely failed to respond to numerous interrogatories—a violation even more grave than the *incomplete* interrogatories found in *Watkins*. Like the attorney in *Aura Lamp*, appellants' counsel did not have the resources to handle a case of this nature, yet he failed to either decline the case or enlist the help of outside counsel at a reasonable point in the litigation. Perhaps most telling was counsel's inability to even speak with the majority of the plaintiffs that he was supposed to be representing. The dismissal is further supported by the fact that the district court first attempted to use the less severe sanction of paid expenses to compel compliance from the appellants, but to no avail. *See Lowe v. City of East Chicago, Ind.*, 897 F.2d 272, 274 (7th. Cir 1990) ("The district court should consider less severe sanctions than dismissal for a party's noncompliance with court orders or failure to prosecute his or her claim expeditiously, unless there exists a clear record of delay or contumacious conduct *or when less drastic sanctions have proven ineffective*." (emphasis added) (internal quotation marks omitted)).

It is evident that the district court was within its discretion to find that the appellants acted willfully, in bad faith, or with fault.

Appellants also argue that the district court failed to adequately warn them that their claims could be dismissed. They assert that this is a requirement for a Rule 37 dismissal, and the court therefore abused its discretion. Appellants are correct that we encourage district courts to provide an explicit warning before a Rule 37 or Rule 41 dismissal is ordered. *See, e.g., Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993) ("[T]here must be an explicit warning before the case is dismissed [on Rule 41(b) grounds]."). More recent case law, however, has clarified that an explicit warning is not absolutely necessary; rather, the language in *Ball* should be taken as a guideline for district court judges and should be treated as a safe harbor rather than a requirement. *Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 665 (7th Cir. 2006). Further, a warning of dismissal need not come from the judge. *Id.* at 666. In *Fischer*, for example, the fact that the defendant requested dismissal if the plaintiff continued to violate discovery orders was deemed to contribute to the plaintiff's warning that dismissal was a possibility. *Id.*

In a case involving as many repeated discovery violations as this, a warning may not even be necessary, but regardless, the district court and Marriott sufficiently warned appellants of the possibility of dismissal. As in *Fischer*, appellees filed more than one motion asking the court to dismiss appellants' claims due to their inability to

meet established discovery deadlines. The court also warned appellants that the extension to August 2010 was their "final extension" and that another request for an extension would not be looked upon with favor. Finally, the magistrate judge's Findings, Report, and Recommendation included dismissal as a possible sanction, providing further warning. Given the nature and volume of appellants' discovery violations, along with the warnings of dismissal that were issued, the district court did not abuse its discretion in granting a Rule 37 motion to dismiss without having explicitly warned appellants of that possibility.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the lower court.