[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11392
_____

D.C. Docket Nos. 2:11-cv-03539-AKK; 2:11-cv-03555-AKK

2:11-cv-03539-AKK

BLOUNT COUNTY BOARD OF EDUCATION,

Plaintiff-Appellant,

versus

MELINDA BOWENS,
as parent and Next Friend of J.B., a minor,

Defendant-Appellee.

_____

2:11-cv-03555-AKK

J.B.,
by and through his mother, Melinda B.,

Plaintiff-Appellee,

versus

JAMES E. CARR,
Superintendent of and for Blount County Board of Education,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 5, 2014)

Before PRYOR and MARTIN, Circuit Judges, and HONEYWELL,[*] District Judge.

PRYOR, Circuit Judge:

The Blount County Board of Education appeals the summary judgment that requires the Board to reimburse Melinda Bowens for the cost of the placement of her son in a private school. 20 U.S.C. § 1400 *et seq.* The Board offered Bowens other placement options for her autistic son, J.B., but she concluded that those options were inadequate and enrolled J.B. in Mitchell's Place, a private school. When Bowens sought reimbursement for the tuition, the Board denied her request. A hearing officer later found that the Board failed to offer a free appropriate public education to J.B. before his third birthday, as required by the Individuals with Disabilities Education Act, *id.* § 1412(a)(1)(A), and that the Board instead consented to J.B.'s placement at Mitchell's Place. The hearing officer ruled that the Board must reimburse Bowens for J.B.'s tuition from October 7, 2009, through July 2010, plus mileage. The district court affirmed that decision. Because the

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District of Florida, sitting by designation.

district court did not abuse its discretion when it weighed the equities and concluded that Blount County must reimburse Bowens, we affirm.

## I.  BACKGROUND

When J.B. was two years and four months old, doctors diagnosed him with autism. Before that diagnosis, doctors had diagnosed J.B. as "developmentally delayed," and he received aid from the Early Intervention System of Alabama, an agency that administers services to children from birth to age three under the Individuals with Disabilities Education Act. 20 U.S.C. § 1431–44. Bowens participated in several meetings with Early Intervention about J.B. and was involved in the creation of an individualized family service plan to determine what services and support were appropriate for him. *Id.* § 1436. The coordinator for Early Intervention arranged for the Sparks Clinic at the University of Alabama at Birmingham to evaluate J.B. After that evaluation, the Sparks Clinic diagnosed J.B. with autism.

In March 2009, Early Intervention alerted the Blount County Board of Education that J.B.'s third birthday would occur on October 27, 2009. Early Intervention invited the Board to a transition planning meeting with J.B.'s family because the Act requires states to offer a free appropriate public education to disabled children when they reach the age of three years. *See* 34 C.F.R. § 300.101(b). The purpose of the meeting was to introduce J.B.'s parents to the

Board and to allow the attendees to explore possibilities for J.B.'s future education. The meeting was scheduled for the following month.

In April 2009, Bowens and representatives from the Board and Early Intervention met at the transition planning meeting. Susan Betke, a service coordinator with Early Intervention, acted as its representative. Jan Sullivan, a speech and language pathologist with Blount County, represented the Board. During the meeting, Sullivan offered three possible placement options for J.B. when he turned three, but none of those facilities met J.B.'s specific needs. Bowens explained to Sullivan that those options were unsatisfactory. The three meeting participants planned to meet again in May to continue discussing options for J.B.

Between the transition planning meeting and the meeting in May, Bowens explored other options for J.B., but she still held out hope that the Board would find an appropriate placement for J.B. and that Sullivan would offer more promising options at the next meeting. She preferred to place J.B. in Blount County because he would eventually attend kindergarten in that school system.

Based on her independent research, Bowens determined that Mitchell's Place, a private school, was the best option for J.B. Mitchell's Place, in Birmingham, Alabama, provided services and education to autistic children, and J.B. could attend preschool there full-time. To secure a spot at Mitchell's Place in the event that the Board could not provide an appropriate option, Bowens

4

completed an application as a backup plan. She toured Mitchell's Place, paid an application fee of $50, and later paid an additional $250 to include J.B. on the Mitchell's Place waiting list.

In May, Bowens again met with Sullivan and Betke to discuss placement options for J.B. They reviewed the diagnosis from the Sparks Center, and Sullivan told Bowens that the Board accepted all of the evaluations from the Sparks Center and that the Board required no additional testing of J.B. Sullivan did not suggest any placement options for J.B., other than those that they had discussed in the April meeting.

When Bowens asked Sullivan about Mitchell's Place, Sullivan responded that Mitchell's Place was an excellent placement option. Afterward, Sullivan acted as though the meeting was finished. Before leaving, Bowens suggested that, to ease the eventual transition to kindergarten, J.B. should meet with speech and occupational therapists in Blount County about once a month. Sullivan agreed, and the meeting concluded. Shortly after that meeting, Bowens made a $3,500 payment to Mitchell's Place for tuition. Sullivan and Bowens met again in August, and Bowens confirmed that she planned to enroll J.B. at Mitchell's Place. Sullivan made no additional offers of placement. They did not discuss reimbursement.

In October 2009, shortly before J.B. turned three, Sullivan, Bowens, and Derrick Bowens, J.B.'s father, met to discuss J.B.'s individualized education

program. They agreed that Mitchell's Place was the most appropriate placement for J.B. based on the evaluation and recommendations of the Sparks Clinic. By then, J.B. had already begun attending Mitchell's Place, where he started in August. They created an individualized education program that included special language services twice a week with Sullivan and another therapist, as well as consultation services to be provided once a month by Blount County. They then signed paperwork, which included a statement that the Board accepted all evaluations from the Sparks Center and that the Board needed no additional evaluations. Sullivan also provided Bowens with a form for a representative of Mitchell's Place to sign. The form acknowledged that Mitchell's Place would be responsible for the implementation of J.B.'s individualized education program. J.B.'s preschool teacher signed that form, and Bowens returned it to Sullivan. Sullivan, Bowens, and Mr. Bowens never discussed reimbursement at the October meeting.

Bowens later sent a letter to the Board in May 2010, in which she requested a formal individualized education program meeting to discuss the upcoming school year. The Board and Bowens met that month, and Bowens, for the first time, requested reimbursement for the tuition that she had paid to Mitchell's Place. The Board postponed the meeting with Bowens so that it could determine its next step. Representatives of the Board then met without Bowens and decided to offer J.B. an

6

individualized education program that was substantially similar to the Mitchell's Place program. After it made that offer, Bowens declined and informed the Board that J.B. would remain at Mitchell's Place for the following year and that she would be seeking reimbursement for that placement too. The Board denied all of Bowens's requests for reimbursement.

Bowens responded by requesting a due process hearing to obtain reimbursement from the Board. At that hearing, both Bowens and Betke testified that Sullivan seemed to be unaware of the services available to J.B. in Blount County. Sullivan testified that she did not offer any alternative to Mitchell's Place during the individualized education program meeting in October because Bowens had already enrolled J.B. there. And Bowens testified that by that October meeting, she made up her mind that J.B. would attend Mitchell's Place for the entire 2009–2010 school year, but she also stated that it was "with the district's full knowledge." Bowens further testified that she did not know that they should have discussed reimbursement at the meeting in October nor that she might be entitled to reimbursement.

The hearing officer found that the Board had not offered a free appropriate public education to J.B. because the facilities and services that Sullivan had proposed were not appropriate. The hearing officer found that Bowens had not unilaterally sent J.B. to Mitchell's Place because "the local education

7

representative of the school system acquiesced and approved the parent's placement of their son in Mitchell's Place." The hearing officer determined that Bowens was entitled to reimbursement for the 2009–2010 school year, beginning in October 2009 and ending in July 2010.

The Board then filed a civil action in the district court, and Bowens filed a separate civil action and sought attorney's fees and costs as the prevailing party in the administrative proceedings. *See J.B. v. Carr*, No. 2:11-cv-3555-WMA (N.D. Ala. filed on Oct. 4, 2011). The district court consolidated the actions. The parties filed cross motions for summary judgment, and the district court granted Bowens's motion for summary judgment and denied the motion filed by the Board.

## II. STANDARD OF REVIEW

We review awards of relief under section 1415(i)(2)(C)(iii) of the Act for abuse of discretion. *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008). The Act grants "broad discretion" to district courts, *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S. Ct. 1996, 2002 (1985), and allows them to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *see also Draper*, 518 F.3d at 1284.

## III. DISCUSSION

The Board cannot overcome the deferential standard of review that we afford to a district court after it weighs the equities. *See Florence Cnty. Sch. Dist.*

8

*Four v. Carter*, 510 U.S. 7, 16, 114 S. Ct. 361, 366 (1993). The district court considered all of the "relevant factors," *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247, 129 S. Ct. 2484, 2496 (2009), and it did not abuse its discretion when it agreed with the determination by the hearing officer.

The Act requires states that receive federal funding to make a "free appropriate public education" available to all resident children with disabilities. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A); *see also Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1311–12 (11th Cir. 2003). The Act defines a free appropriate public education as special education services that meet four criteria:

> The term "free appropriate public education" means special education and related services that—
>
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) . . . .

20 U.S.C. § 1401(9). When a public school fails to provide a free appropriate public education, and parents place their child in an "appropriate" private school, a court may require the school district to reimburse the parents for the cost of the private education. *See* 34 C.F.R. § 300.148(c); *Forest Grove*, 557 U.S. at 232–33, 129 S. Ct. at 2487–88.

9

But reimbursement is discretionary, and a court may still deny some—or all—reimbursement based on equitable considerations. *See* 20 U.S.C. § 1412(a)(10)(C)(iii). For example, "[t]he cost of reimbursement . . . may be reduced or denied" if the parents neither informed the individualized education program team at the most recent meeting that they rejected the placement proposed by the team and that they intended to "enroll their child in a private school at public expense," *id.*, nor gave written notice of that information ten days before they removed the child from public school. *Id.* Other equitable considerations include whether the parents failed to make their child available for evaluation by the school and whether a court finds that the parents acted unreasonably. *Id*; *see also Forest Grove*, 557 U.S. at 247, 129 S. Ct. at 2496.

The Board argues that Bowens failed to request reimbursement at the last meeting in October 2009 and, as a result, failed to satisfy a statutory "[l]imitation on reimbursement" for a unilateral private school placement, 20 U.S.C. § 1412(a)(10)(C)(iii), but the Board has it wrong for at least two reasons. First, Bowens did not *unilaterally* enroll J.B. at Mitchell's Place. Both the district court and the hearing officer found that Sullivan—and the Board by extension—agreed to the placement of J.B. at Mitchell's Place, and the Board does not contest that factual finding. Because the Board approved or, at the very least, acquiesced in the placement of J.B. at Mitchell's Place, the provision for a limitation on

10

reimbursement for a unilateral placement does not apply to this appeal. *See also* 20 U.S.C. § 1412(a)(10)(B)(i) (providing for a free education when a school board agrees to the placement of a child in a private school). Second, even if Bowens had unilaterally placed J.B. at Mitchell's Place, the provision for a limitation on reimbursement still does not bar a claim for reimbursement. Instead, that provision grants discretion to a district court to "reduce[] or den[y]" reimbursement in accordance with the equitable considerations—such as failure to give notice—that the statute lists. *Id.* § 1412(a)(10)(C)(iii); *see also id.* § 1415(i)(2)(C).

The Board also argues that Bowens's placement of J.B. at Mitchell's Place and failure to alert the Board of her intent to seek reimbursement deprived it of an opportunity to address her concerns, but we disagree. The Board argues that if Bowens had provided notice at the October 2009 meeting that she intended to request reimbursement, it would have offered additional services to satisfy its obligations under the Act. But the Board again ignores that it agreed to the placement of J.B. at Mitchell's Place, so Bowens had no duty to notify the Board that she planned to seek reimbursement.

We agree with the district court that the Act imposes a duty on the Board to offer a free appropriate education at the outset, instead of waiting to see if a parent will seek reimbursement for a private placement. To the extent that the Board was harmed, Bowens's failure to request reimbursement was not the culprit; as the

district court stated, the Board harmed itself when it offered "inadequate option[s] and [attempted to] wash its hands of its obligations." The Board cannot now complain that it was not offered the opportunity for a do-over.

Bowens argues that we should grant her reimbursement for the 2010–2011 school year, but she did not appeal the denial of that reimbursement by the hearing officer to the district court, nor to this Court. We will not consider that argument for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Bowens.