**Debra A. FOSTER, Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO and Amandla Charter School, Defendants–Appellees.**

No. 14–3035.

United States Court of Appeals, Seventh Circuit.

Submitted May 11, 2015.*

Decided May 11, 2015.

Debra A. Foster, In her Own Rights and Parent/Guardian of Minor Brittany S. Jeffries, Chicago, IL, pro se.

Anna Slater, Attorney, Chicago Board of Education Law Department, Chicago, IL, Samuel C. Hall, Jr., Attorney, Crivello Carlson, S.C., Milwaukee, WI, for Defendant–Appellee.

Before JOEL M. FLAUM, Circuit Judge, MICHAEL S. KANNE, Circuit Judge, ANN CLAIRE WILLIAMS, Circuit Judge.

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R.APP. P. 34(a)(2)(C).

## ORDER

Debra Foster contends that her daughter was denied special-education services at her former school. Foster filed this lawsuit, principally claiming violations of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 to 1418. On the defendants' motions, the district court dismissed the action with the explanation that without an attorney Foster cannot litigate claims belonging to her daughter and that she fails to state a claim of her own. FED.R.CIV.P. 12(b)(6). Foster appeals. We conclude that she does state a claim for relief, and we vacate the dismissal in part and remand for further proceedings.

For purposes of this appeal, we accept as true the factual account in Foster's amended complaint and its attachments. *See Fox v. Am. Alt. Ins. Corp.,* 757 F.3d 680, 681 (7th Cir.2014); *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir.2013). Foster's daughter, who is now in high school elsewhere, attended middle school at Amandla Charter School, an open-enrollment, free public school that is part of the Chicago school system. Foster had first requested via a note in January 2010 that Amandla evaluate her daughter for an Individualized Education Program ("IEP"). That summer, the girl began receiving special-education services pursuant to § 504 of the Rehabilitation Act, *see* 29 U.S.C. § 794, but she was not evaluated for an IEP. A year later, Foster gave Amandla an updated medical report so the school could continue the § 504 services, and once more she requested that her daughter be evaluated for an IEP. School administrators finally responded in November 2011 (nearly two years after Foster's first request) by telling Foster that she must give *informed* and *written* consent before her daughter could be evaluated to create an IEP. *See* 20 U.S.C. § 1414(a)(1); 105 ILCS 5/14–8.02(b). But Amandla did not send Foster a consent form, so that same month she wrote a school administrator requesting a "full IEP" and "case study." Amandla waited another year to schedule an IEP meeting, which Foster, after attending, derided as a sham. At that point Foster requested a due-process hearing. *See* 20 U.S.C. § 1415(f).

Several persons testified at that December 2012 hearing before the Illinois State Board of Education. A clinical psychologist stated that Foster had retained her in September 2011 to evaluate the girl, and she had recommended a full case study including a speech and language evaluation. A speech and language pathologist testified that he, too, had been retained by Foster in September 2011 to evaluate her daughter and had discovered a significant memory disorder involving difficulty with word and symbol retrieval. Subsequently he conducted 25 "intensive sessions" to improve the girl's "working memory and other issues," after which her short-term memory retrieval progressed from "severe" to "low average." Multiple case managers from Amandla testified that they had known the girl was struggling in classes and at some point had a § 504 plan. Foster requested that the school district provide speech and language evaluations, reimbursement for the evaluations she had procured, a new school placement, and "compensatory education" to include various reading, speech, and language services.

The hearing officer determined that, since at least November 2011, the school had possessed "ample evidence" that Foster's daughter needed special-education services but, he speculated, her paperwork likely "fell through the cracks." Therefore, the hearing officer concluded, the school district had "substantially impeded" the student's right to a "free appropriate

'public education" and had violated IDEA. See 20 U.S.C. § 1412(a)(1). But the hearing officer also faulted Foster for not doing more to assure that the school received the informed written consent necessary to evaluate her daughter, see id. § 1414(a)(1)(D)(i)(I), though the hearing officer did not say what else Foster might have done to prod Amandla to take action. In any event he ordered Amandla to give Foster a consent form and explained to Foster that the school couldn't evaluate her daughter if she failed to return the completed form. The hearing officer noted that the student should receive "compensatory education" for the period dating back to March 2012, by which time, he thought, Amandla should have evaluated the girl and implemented an IEP. He concluded that, since that time, the girl had made significant gains during her sessions with the speech and language pathologist but still required "an additional 25 intensive sessions" to achieve the level that "she would have occupied but for the denial" of special-education services under IDEA. After this ruling Amandla apparently gave Foster a consent form, but she never signed and returned it. Instead, a new school year was starting, and Foster enrolled her daughter at a different public charter school. The girl, who is still a minor, was evaluated and given an IEP for her high-school program at the new school.

Any party "aggrieved" by an IDEA hearing officer's "findings and decision" may seek judicial review. See 20 U.S.C. § 1415(i)(2)(A); Jamie S. v. Milwaukee Pub. Sch., 668 F.3d 481, 486 (7th Cir.2012); S. Kingstown Sch. Comm. v. Joanna S., 773 F.3d 344, 349 (1st Cir.2014); E.L. ex rel. Lorsson v. Chapel Hill–Carrboro Bd. of Educ., 773 F.3d 509, 513–14 (4th Cir. 2014). Amandla and the Board of Education of the City of Chicago did nothing to challenge the hearing officer's decision, but Foster did. Foster, purporting to repre-

sent her daughter as well as herself, filed this action alleging that Amandla and the Board had violated IDEA by not providing the girl with a free appropriate public education. (Like all Illinois public schools, charter schools must comply with IDEA, see 105 ILCS 5/27A–5(g), and the Board, as the "local educational agency" for all public schools in Chicago, is a proper defendant, see 20 U.S.C. §§ 1413(a), 1401(19)(A); Stanek v. St. Charles Cmty. Unit Sch. Dist. # 303, 783 F.3d 634, 640–41 (7th Cir.2015).) Foster also asserted related claims under § 504 of the Rehabilitation Act and 42 U.S.C. § 1983.

In granting the defendants' motions to dismiss, the district court first recognized that Foster cannot litigate her daughter's claims under IDEA (or the other statutes she cites) without a lawyer. Those claims the district court dismissed without prejudice to the daughter's right to pursue them in the future. That ruling significantly limited Foster's bases for recovery under IDEA and ruled out entirely a claim under the Rehabilitation Act, since Foster is not disabled and thus has no discrimination claim of her own under § 504. The court further concluded that Foster's complaint fails to state a claim under § 1983 because it makes no allegations that a policy or custom of these corporate defendants was the moving force behind the claimed injuries to Foster. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

On the other hand, the district court acknowledged that Foster, as the parent of a child with a learning disability, would have enforceable rights under IDEA independent of her daughter. The defendants had argued that Foster could not proceed with any claims of her own because, they contended, she did not sign a consent form after the hearing officer's decision and thus could not claim that she was "ag-

grieved" by that decision. The district court rejected that reasoning; the court concluded that what Foster did or didn't do *after* the hearing officer's decision was irrelevant to whether she was aggrieved by the hearing officer's disposition of her complaints about events occurring *before* the hearing. The district court, though, offered its own reasons for concluding that Foster had not been aggrieved by the hearing officer's decision. Most significantly, the court said, Foster's federal complaint seeks reimbursement for the cost of her daughter's sessions with the speech and language pathologist, which, the court asserted, is not among the relief she requested from the hearing officer. It followed, the court reasoned, that Foster was not aggrieved by the hearing officer's decision. And since that decision did give Foster other relief, the court added, she has no claim under IDEA.

In this court the defendants first argue that we lack appellate jurisdiction because the district court dismissed the daughter's claims without prejudice. This contention misunderstands the meaning of a "final" decision for purposes of 28 U.S.C. § 1291. The district court dismissed without prejudice the claims belonging to Foster's daughter in order to make clear that the girl, *who is not even a proper plaintiff,* is not forced to counter a meritless defense of claim preclusion should she ever decide to pursue those claims. *See Taylor v. Sturgell,* 553 U.S. 880, 892–93, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008); *Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 970–71 (7th Cir.1998). But for purposes of § 1291, finality simply means that nothing remains to be decided and the district court is finished with the case. *See Gelboim v. Bank of Am. Corp.,* —— U.S. ——, 135 S.Ct. 897, 902, 190 L.Ed.2d 789 (2015); *Brown v. Columbia Sussex Corp.,* 664 F.3d 182, 186 (7th Cir.2011). Here the district court terminated the lawsuit, rendering its dismissal final. *See Gelboim,* 135 S.Ct. at 902; *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510, 517–19 n. 2 (7th Cir.2015); *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1020–21 (7th Cir.2013). Secure in our jurisdiction, we turn to the merits.

■ Foster does not develop challenges to the district court's dismissal of her § 504 and § 1983 claims. She does continue to maintain that, as the hearing officer concluded, the defendants violated IDEA by denying her daughter a free appropriate public education. But Foster misses the district court's point that it's necessary to distinguish between violations of the girl's rights under IDEA and Foster's own statutory rights. Foster acknowledges the distinction, but she reads *Winkelman ex rel. Winkelman v. Parma City School District,* 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007), as holding that a pro se parent can litigate a minor child's claims under IDEA. That reading is incorrect. *Winkelman* confirms that *parents* of a child with a learning disability have their own enforceable rights under IDEA, *see id.* at 531–33, 127 S.Ct. 1994, but the decision specifically leaves open the question whether IDEA allows a parent to litigate the child's claims without counsel, *see id.* at 535, 127 S.Ct. 1994. And we have repeatedly held that the rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se. *See Georgakis v. Ill. State. Univ.,* 722 F.3d 1075, 1077 (7th Cir.2013); *Elustra v. Mineo,* 595 F.3d 699, 705 (7th Cir.2010); *Malone v. Nielson,* 474 F.3d 934, 937 (7th Cir.2007); *Mosely v. Bd. of Ed. of Chi.,* 434 F.3d 527, 532 (7th Cir.2006); *Navin v. Park Ridge Sch. Dist. 64,* 270 F.3d 1147, 1149 (7th Cir.2001). Thus the district court properly dismissed Foster's daughter's purported claims.

█ The district court erred, however, in dismissing Foster's own claims. Foster alleges that the defendants kept her from participating in special-education procedures by repeatedly ignoring her requests to evaluate her daughter for an IEP and that she had to pay for her daughter's sessions with the speech and language pathologist from September 2011 to May 2013. These allegations are sufficient to state a claim that Foster's parental rights under IDEA were violated. *See* 20 U.S.C. § 1415(a), (b); *Stanek,* 783 F.3d at 641–42. And IDEA authorizes reimbursement for the cost of private special-education services when a school district fails to provide a free appropriate public education. *See Forest Grove Sch. Dist. v. T.A.,* 557 U.S. 230, 247, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009); *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 12–14, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 369–70, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Stanek,* 783 F.3d at 641–42; *Blount Cnty. Bd. of Educ. v. Bowens,* 762 F.3d 1242, 1247 (11th Cir.2014); *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.,* 760 F.3d 211, 215 (2d Cir.2014); *Batchelor v. Rose Tree Media Sch. Dist.,* 759 F.3d 266, 277 (3d Cir.2014).

The defendants insist that Foster does not state a claim because she still does not explain how she was aggrieved by the hearing officer's decision. But we read Foster's pro se filings more generously. Notably, the defendants do not attempt to defend the district court's determination that Foster was not aggrieved because she did not specifically request from the hearing officer reimbursement for her daughter's previous sessions with the speech and language pathologist. This reasoning is unsupported by authority and we conclude that it is unsound. Foster requested several forms of "compensatory education,"

including speech and language services, which the hearing officer acknowledged had been helpful and thus ordered the defendants to pay for 25 *more* sessions with the same pathologist. The hearing officer's failure to explicitly order the defendants to also pay for the 25 *prior* sessions—even though he calculated an appropriate compensatory-education period to begin in March 2012—does not mean that Foster did not intend such reimbursement to be part of the requested relief.

Moreover, IDEA authorizes a district court to grant "such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii); *see Batchelor,* 759 F.3d at 277; *Bowens,* 762 F.3d at 1246. Indeed, "compensatory education" is a judicially created equitable remedy available "to compensate for a past denial of a free appropriate public education." *Jamie S.,* 668 F.3d at 489; *see Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. State Bd. of Educ.,* 79 F.3d 654, 660 (7th Cir.1996). And the term has been defined in various ways by our sister circuits. *See, e.g., R.L. v. Miami–Dade Cnty. Sch. Bd.,* 757 F.3d 1173, 1178 (11th Cir. 2014) (court may order "extra educational services designed to compensate for a past deficient program"); *Batchelor,* 759 F.3d at 277–78 (compensatory education may include reimbursement for tutoring or other financial losses); *D.C. v. Ijeabuonwu,* 642 F.3d 1191, 1195 (D.C.Cir.2011) (compensatory education is "the belated provision of educational services the child should have received in the first place"); *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.,* 631 F.3d 1117, 1125 (9th Cir.2011) (compensatory education is an equitable remedy to account for educational services the school should have been providing); *Somoza v. N.Y.C. Dep't of Educ.,* 538 F.3d 106, 109 n. 2 (2d Cir.2008) (compensatory education is "prospective equitable relief"

and a school district must even "fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education"). We have said that "reimbursement for out-of-pocket educational expenses" is one type of compensatory education, *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 597–98 (7th Cir.2006), and thus Foster's request for compensatory education must be read to include a request for reimbursement. A parent who unilaterally places her child in private tutoring assumes the risk that she may not be reimbursed if the public school did not violate IDEA or the placement is inappropriate, *see M.B. ex rel. Berns v. Hamilton Se. Sch.*, 668 F.3d 851, 864 (7th Cir.2011), but here the defendants do not challenge the hearing officer's findings that they had denied Foster's daughter a free appropriate public education and that her sessions with the speech and language pathologist had been an appropriate—although not entirely sufficient—alternative.

Accordingly, as to Foster's own claims under the Individuals with Disabilities Education Act, the judgment is VACATED and the case is REMANDED for further proceedings consistent with this decision. In all other respects the judgment is AFFIRMED.